UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JASON GRANT,

                        Petitioner,

     -against-

J.T. SMITH,

                        Respondent.
------------------------------------------------------------x

**MEMORANDUM & ORDER**

10-cv-950 (ENV)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 28 2014 ★
BROOKLYN OFFICE

VITALIANO, D.J.,

Petitioner Jason Grant, appearing *pro se*, brings this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, against respondent J.T. Smith. Following a jury trial in Supreme Court, Kings County, Grant was convicted of burglary in the first degree. In his petition, Grant contends that his rights to due process and a fair trial were violated when the prosecutor, on summation, appealed to the juror's emotions and sympathies, commented on Grant's failure to testify, and sought to shift the burden of proof to the accused. Respondent argues that Grant's claims are procedurally barred in part and are, in any case, without merit. For the reasons set forth below, the writ is denied and Grant's petition is dismissed.

## Background

On September 30, 2004, Grant and Desmond Hughes, wearing bandanas over their faces and brandishing a gun, pushed their way into Apartment G at 3103 Foster Avenue in Brooklyn.[1] Lillian Brown and Rita Cowan, the apartment's occupants,

---

[1] Because Grant was convicted, the Court recites the following facts in the light most favorable to

1

were inside with two other individuals. At least some of them were smoking crack cocaine and/or drinking beer. After entering the apartment, Grant and Hughes threatened the people inside and demanded money from them. At one point, Grant struck Brown in the head with the gun, causing her to bleed. Grant and Hughes also took identification credentials from two of the victims. A neighbor, who had observed the two men push their way into the apartment and heard them demand money, called the police. Police arrived and apprehended Grant and Hughes while they were still in the apartment. A search produced an unloaded firearm in a trash can in the kitchen.

On January 5, 2006, Grant was charged with one count each of burglary in the first, second, and third degree (N.Y. Penal Law §§ 140.30(3), 140.25(2), 140.20), two counts of attempted robbery in the first degree (N.Y. Penal Law §§ 110.00/160.15(4), 110.00/160.15(3)), one count each of attempted robbery in the second and third degree (N.Y. Penal Law §§ 110.00/160.10(1), 110.00/160.05), one count of criminal possession of a weapon in the fourth degree (N.Y. Penal Law § 265.01 (1)), and one count each of unlawful imprisonment in the first and second degree (N.Y. Penal Law §§ 135.10, 135.05)). The case was tried to a jury.

The habeas challenge here pinpoints the summations. The conduct of the rest of the trial is unchallenged. In closing argument, defense counsel emphasized how "high" Brown and the other witnesses had been at the time of the alleged robbery, characterizing the apartment where the incident took place as a "drug den," where people came to buy drugs. It was not really a home, counsel argued. Ultimately, he

---

the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

theorized that Grant had been there to purchase drugs, rather than commit a robbery. He further offered that the gun recovered belonged to one of the witnesses. The People's summation counter-attacked. Acknowledging that the victims were drug users and dealers, the prosecutor argued that Grant had picked these victims precisely for that reason, *i.e.*, because no one would care about such people, remarking: "I hope the 12 of you do." (Tr. at 250, 261.) The prosecutor pressed further, saying that, "regardless of what we are and what we do, we would like to feel safe in our own home." (Tr. at 257.) The prosecutor observed, additionally, that there had been no evidence or testimony to suggest that Grant had been in the apartment for any purpose other than to commit robbery, arguing that defense counsel's remarks suggesting the contrary were "guesswork" and "speculation." (Tr. at 254.)

As is customary, the trial court's concluding charge immediately followed summations. The court charge to the jury covered, among other topics, the burden of proof, the defendant's right not to testify, that the arguments of counsel on summation were not evidence, and that the jury should not consider such factors as "sympathy" or "community interests" in reaching its verdict. (Tr. at 265, 268-71.) After the charge, defense counsel objected to the prosecutor's statement on summation that "no one took the stand" regarding the defendant's purpose in going to the apartment. The objection rested on the ground that the remark implied that it was the defendant's burden to prove that he was there for a purpose other than robbery, and suggested that the defendant had an obligation to testify. (Tr. at 290.) In response, the court gave a curative instruction, reminding the jury that nothing said in summation was evidence, and that no matter what was said, the prosecution had the full burden of

3

proving all elements of the charged crimes beyond a reasonable doubt, and that that burden "never shifts." (Tr. at 291.) Defense counsel subsequently objected that the instruction was insufficient to cure the implication that Grant had an obligation to testify and/or present a defense. That objection was overruled. (Tr. 295-96.)

Grant was convicted on the count of burglary in the first degree. On October 16, 2006, he was sentenced to a term of imprisonment of 25 years with five years of post-release supervision. He appealed to the Appellate Division, Second Department, on the ground that the prosecutor's summation remarks deprived him of a fair trial, in that they: (1) unfairly elicited sympathy for the victims; (2) sought to shift the burden of proof to the defendant; and (3) commented on the defendant's failure to testify. The Appellate Division found that all but one of Grant's claims—that the prosecutor's comments had shifted the burden of proof to the defendant—were unpreserved for appellate review. With respect to the preserved issue, the Appellate Division held that the trial court "clearly instructed the jury that the burden of proof remained with the People and did not shift to the defendant." *People v. Grant*, 54 A.D.3d 872, 873, 863 N.Y.S.2d 377 (2008). The court went on to find that, even if the remaining issues had been preserved, the challenged remarks either were a fair response to the defendant's summation, or constituted harmless error. *Id.* Grant's application for leave to appeal to the New York Court of Appeals was denied on December 9, 2008. *People v. Grant*, 11 N.Y.3d 897, 873 N.Y.S.2d 273 (2008). Grant filed this petition on February 25, 2010.[2]

---

[2] The procedural history indicates that Grant's petition may be untimely. *See* 28 U.S.C. § 2244(d). However, respondent has not asserted the statute of limitations as a defense, and the

## Standard of Review

Under the Antiterroism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a writ of habeas corpus shall not issue with respect to any claim that was adjudicated on the merits in state court unless the state court's decision: (1) "was contrary to," or involved an unreasonable application of, "clearly established federal law" as determined by the United States Supreme Court, or, (2) "was based on an unreasonable determination of the facts" in light of the evidence presented. 28 U.S.C. § 2254(d) ("§ 2254(d)"); *see also Gutierrez v. McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). AEDPA's deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011); *see also Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). Where AEDPA deference applies, "a state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (*quoting* 28 U.S.C. § 2254(e)(1)).

Furthermore, federal habeas review is not available where a claim has already been decided by a state court, and the state court's decision "'rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.'" *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011), *cert. denied*, 132 S. Ct.

---

Court declines to do so *sua sponte*. *See Hill v. Mance*, 598 F. Supp. 2d 371, 377 (W.D.N.Y. 2009); *Barnett v. Roper*, 541 F.3d 804, 807-08 (8th Cir. 2008).

5

2439 (2012) (*quoting Cone v. Bell*, 556 U.S. 449, 465 (2009)). This includes situations in which the state court "declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Federal courts may not review such a procedurally defaulted claim unless the petitioner can show both "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," i.e., that the petitioner is actually innocent. *Id.* at 724; *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001).

Finally, because Grant is proceeding *pro se*, "his petition will be construed liberally and interpreted to raise the strongest arguments it suggests." *Paez v. U.S.*, Nos. 11-cv-2688, 08-cr-0823–03, 2012 WL 1574826, at *1 (S.D.N.Y. May 3, 2012) (citing *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

## Discussion

Grant raised all of his arguments regarding the prosecution's improper summation on his direct appeal. The Second Department found that the first two arguments had not been preserved for appellate review, because Grant had failed to raise them before the trial court. The state court rebuff of these claims, therefore, rests on an independent and adequate state procedural ground. *See* N.Y. C.P.L. ("CPL") § 470.05 (An issue of law is preserved for appellate review only if the defendant objected to or otherwise protested the alleged error at trial); *Downs*, 657 F.3d at 104 ("... we have held repeatedly that the contemporaneous objection rule is a

6

firmly established and regularly followed New York procedural rule."). As such, this Court is barred from reviewing these claims, unless Grant can establish both cause for the default and prejudice resulting from it.[3]

With specific focus on the claim that the prosecution's summation enflamed the jury's sympathies for the victims, Grant does not allege any cause for his failure to raise this claim before the trial court, and none is apparent from the record.[4] Moreover, Grant fails to demonstrate that prejudice would arise from failure to review the defaulted claim—in other words, that but for the alleged error, there is a reasonable probability that the outcome of the trial would have been different. *See Strickler v. Greene*, 527 U.S. 263, 289 (1999). Quite to the contrary, the evidence of Grant's guilt presented at trial was overwhelming. Notably, Grant was apprehended at the crime scene, while the robbery was still in progress, in possession of an identification card belonging to one of the victims and a bandana that numerous witnesses testified had been used to cover the assailant's face. One witness, moreover, identified Grant from the stand at trial as the perpetrator; another recalled an

---

[3] Grant's assertion in his reply brief that he is actually innocent is meritless, *see infra* at 11, and thus he cannot demonstrate a "fundamental miscarriage of justice" arising from failure to address his defaulted claim. *Murray*, 477 U.S. at 496.

[4] In his reply brief, Grant argues, for the first time, that his failure to preserve this claim was the result of ineffective assistance of counsel. This ineffective assistance claim is itself unexhausted and procedurally defaulted. *Murray*, 477 U.S. at 489. Even if it were not, however, Grant points to no specific instances demonstrating that his counsel was ineffective, and indeed, this Court's review of the record shows that defense counsel was well-prepared and zealous. *See Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) (a habeas petitioner claiming ineffective assistance of counsel must "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation.").

identifying scar on his face. Additionally, the trial court gave the jurors clear instructions that they were to make their decision based on the evidence only, and not based on "sympathy," "vengeance," or "community interests," nor could they consider anything said on summation as evidence. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("juries are presumed to follow their instructions."). Even if the prosecutor's comments about the victims had been inappropriate—and the Court does not find that they were—there is no reasonable probability that the outcome of the trial would have been different had they not been made. None of it is a well-spring for habeas relief.

Petitioner's claim that the prosecutor improperly commented on his failure to testify presents a different issue, but ultimately the same result. From the record, it appears that Grant did, in fact, raise this claim with the trial court and on direct appeal. Trial counsel first objected on this ground at the conclusion of the jury charge. (*See* Tr. at 290.) The trial court agreed to charge further. After the Court's curative instruction, defense counsel objected that the instruction was insufficient to address the prosecutor's implication that Grant had an obligation to take the stand or present a defense. (Tr. at 295.) The trial court disagreed in light of the charge in its totality, but noted the "exception and objection" on the record. (Tr. at 296.) Under New York law, "[i]f the court acknowledges an objection to a ruling but persists in the ruling, the objection is likely preserved." *Downs*, 657 F.3d at 106. In light of this, the Appellate Division's finding, without elaboration, that this issue was unpreserved for appellate review (notwithstanding the norm) might be a misapplication of the state procedural rule. *See id.* at 103; *Lee v. Kemna*, 534 U.S. 362, 376 (2002) ("[E]xorbitant

application of a generally sound rule" may "render[] the state ground inadequate to stop consideration of a federal question."). On the chance that it might, the Court will review this claim on the merits.[5]

In order to prevail on his remaining two claims—that the prosecutor commented on his failure to testify and that the comment shifted the burden of proof—petitioner must demonstrate that the state court's merits determinations of these issues was contrary to, or involved an unreasonable application of, "clearly established federal law," or, "was based on an unreasonable determination of the facts" in light of the evidence presented. 28 U.S.C. § 2254(d). Petitioner cannot and does not meet this standard.

A prosecutor's comments at trial do not rise to the level of a constitutional violation unless they have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Id.* (quotation marks omitted). Most important, "[t]he prosecutors' comments must be evaluated in light of the defense argument that preceded it." *Id.* at 179. Here, the prosecutor's comments were appropriate when viewed in the context of the defense

---

[5] It is important to observe that while the Appellate Division held that Grant's claim that the prosecution had commented on his failure to testify had not been preserved, it alternatively found that the comments were a fair response to the defendant's summation, and that any error in failing to strike them was otherwise harmless. *Grant*, 54 A.D.3d at 873. Review of the Appellate Division's merits holding is, of course, essential as part of the merits review, premised here on the finding that this claim was not procedurally defaulted.

9

arguments that preceded them, and certainly did not infect the whole trial with unfairness.

Specifically, on summation, defense counsel suggested to the jury that Grant was in the apartment not to commit a robbery, but to buy drugs. It was obviously to this theory that the prosecutor was responding when he pointed out, correctly, that there was no testimony or other evidence in the record to suggest that Grant had come to buy drugs, and not to rob the occupants. Presumably, only Grant could offer evidence to contradict the evidence offered by the crime victims on their direct examination, that is, to support defense counsel's otherwise speculative drug-buy theory. Surely, if there was any substance to that theory, proof could have been elicited from Grant or by cross-examination of those present who had been called as the People's witnesses. The Appellate Division's finding that the prosecutor's comments, which did not by any stretch approach a specific comment about the defendant's failure to testify or that he had a burden of proof, "a fair response to the defendant's summation" is certainly not unreasonable. Furthermore, even if the prosecutor's comments could be interpreted as implying that Grant had an obligation to testify, or had the burden to prove that he was not there to commit robbery, the trial court's jury charge and curative instruction were sufficient to dispel any hypothetical misunderstanding these comments may have created among the jury. Additionally, any errors in the trial court's response to the defense objections were harmless in view of the overwhelming evidence of Grant's guilt, and defense counsel's speculative theory notwithstanding, the fatal absence of evidence to the contrary. *See*

*Brecht v. Abrahamson*, 507 U.S. 619, 638-39 (1993) (Error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict."). Accordingly, both claims are dismissed.

Lastly, in his reply brief, Grant raises—for the first time—a fourth claim, in which he argues that he is actually innocent. He contends that to be guilty of the crime of burglary in the first degree under N.Y. Penal Law § 140.30(3), the accused has to have used or threatened to use a "dangerous instrument," and the evidence at his trial showed undisputedly that he used only an unloaded gun, which, he contends further, cannot be a "dangerous instrument" for the purposes of that crime. *See People v. Hilton*, 145 A.D.2d 352, 429-30, 535 N.Y.S.2d 708 (1st Dept. 1989). For whatever it is worth, Grant did not raise this claim in his petition, nor did he raise it at trial or on his direct appeal. Obviously, at bottom, the claim is unexhausted. *See, e.g., Spence v. Superintendent*, 219 F.3d 162, 170 (2d Cir. 2000).

In any event, moreover, the claim is meritless. The evidence was clear and uncontradicted that Grant struck Brown in the head with the gun, leaving her with a bloody injury. This fact alone is sufficient to support a finding that he used a "dangerous instrument," even if the gun was unloaded and could not have been used in *another* and different manner. *See People v. Carter*, 53 N.Y.2d 113, 116, 423 N.E.2d 30, 31-32 (1981) (any 'instrument, article or substance,' . . . *becomes* a dangerous instrument when it is *used* in a manner which renders it readily capable of causing serious physical injury."); *People v. Plummer*, 95 A.D.3d 647, 944 N.Y.S.2d 134 *leave to appeal denied*, 19 N.Y.3d 976, 973 N.E.2d 769 (2012) (Defendant was properly

11

convicted of robbery in the first degree under a theory of use of a dangerous instrument where defendant struck the victim on the back of his head with an imitation pistol, causing a painful, bloody laceration.). With his legal arguments founded on the definition of statutory elements of the offense entirely meritless, Grant has manifestly failed as a matter of law and fact to demonstrate that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007).

## Conclusion

For the foregoing reasons, the petition for habeas corpus filed by Jason Grant is dismissed and the writ is denied. Additionally, as Grant makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-5 (1962).

The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
March 15, 2014

s/Eric N. Vitaliano

ERIC N. VITALIANO
United States District Judge